FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 1 0 2006

IN THE UNITED STATES DISTRICT COURT

JAMES W. McCORMACK, CLERK
By:_____
                        DEP CLERK
                    PLAINTIFFS

ARTHUR A. DERCKSEN and
NELL A. DERCKSEN

V.                Case No.  **4 - 0 6 - C V - 0 3 2 4 SWW**

AMERIQUEST MORTGAGE COMPANY                                  DEFENDANT

This case assigned to District Judge_____

**COMPLAINT** and to Magistrate Judge_____
**FOR RESCISSION AND RECOUPMENT;**
**FOR INJUNCTIVE RELIEF; VIOLATIONS OF THE**
**TRUTH-IN-LENDING ACT; VIOLATIONS OF REAL ESTATE**
**SETTLEMENT PROCEDURES ACT; VIOLATIONS OF STATE COLLECTION**
**AND UNFAIR AND DECEPTIVE ACTS AND PRACTICES; AND FOR FRAUD**

Plaintiffs, Arthur A. Dercksen and Nell A. Dercksen, by and through their

attorney, Scott A. Scholl, hereby brings this action, and complaint for rescission and

fraud, among others against Ameriquest Mortgage Company against loan number

012112402-7392 dated as of May 24, 2005 for serious breaches of its fiduciary duties, for

violations of the Real Estate Settlement Procedures Act ("RESPA"), for violations of the

Truth-in-Lending Act ("TILA"), for violations of the Home Ownership and Equity

Protection Act ("HOEPA") §§ 1602(aa) and 1639, and to obtain statutory damages for

such wrongful action of Defendant; to obtain injunctive relief from enforcement of any

and all foreclosure related remedies, if any such action is taken, including attempts to

take possession of the Defendant's property through unlawful detainer procedures under

Arkansas law; and to obtain declaratory relief, and other relief for violations of the above

mentioned laws by Defendant herein.

1.      This Court has jurisdiction of the claims pursuant to 15 U.S.C. § 1601, *et

seq*, 15 U.S.C. § 1640(e) and (g), 15 U.S.C. § 1635(a), (b), (f) and (g) and 12 U.S.C. §

2614 and Arkansas Law.

2.     This Court has jurisdiction of the fraud claims pursuant to the doctrine of common law fraud.

3.     Venue is proper in this district because the real property which is the subject of this suit is in the district; the Defendant is domiciled in another state, therefore diversity under 28 U.S.C. § 1332 is evoked.

4.     Plaintiffs, Arthur A. Dercksen and Nell A. Dercksen, hereinafter referred to as "Plaintiffs," are residents in this District and reside at 215 College Avenue, Clarksville, AR 72830.

5.     Defendant, Ameriquest Mortgage Company, hereinafter referred to as "Defendant", is domiciled in the State of California with an address of 7633 East 63rd Place, Suite 505, Tulsa, OK 74133.

6.     The federally related mortgage loan transaction at the root of this case was closed on or about May 24, 2005 ("Closing"), whereupon Plaintiffs granted a Mortgage to Defendant whereupon covering real property, which was then and now remains the permanent residence of the Plaintiffs. See Plaintiffs' Exhibit "A". Reference is made to such instruments, including the mortgage to show the full description of such real property. ("Property")

7.     On August 8, 2005, Plaintiffs rescinded the loan transaction, See Plaintiffs' Exhibit "B," that is the subject of this suit. Within that rescission letter Plaintiffs detailed the reasons for rescission. No response or performance as required under TILA or HOEPA was made by Defendant.

8.     On the loan closing date the Defendant did not give to the Plaintiff relevant disclosures as required by the TILA. Those disclosures are: Disclosure of Yield

2

Spread Premium, accurate disclosure of the annual percentage rate, accurate disclosure of the closing date, Plaintiffs did not receive a Good Faith Estimate and the Defendant did not give two accurate disclosures of the Right to Cancel the loan transaction. Further, Defendant failed to provide Plaintiffs with all disclosures required under HOEPA three days prior to closing.

9. Within the Hud-1 Settlement Statement at line 801 there is a discount point fee charged. Discount points are finance charges paid by the Plaintiff to buy down the rate. In this case the rate was up sold indicating that the discount point amounts to a Yield Spread Premium, hereinafter referred to as "YSP".

10. At all time relevant herein, Plaintiffs reserve the right to amend the facts and claims for relief as the facts are made available.

11. The original payee of the note and beneficiary of other documents at Closing, Defendant acted in contravention of the Federal Truth-in-Lending Act, 15 U.S.C. § 1601, *et seq.* and Title 12 Code of Federal Regulations, Part 226.1 (Regulation Z) in the following particulars, each and all of which may be asserted now defensively in recoupment by Plaintiffs as a result of this suit:

a. Defendant did not give the Plaintiffs the required 3-day cooling off period in the manner required by 12 CFR § 226-19;

b. Plaintiffs did not receive two accurate copies of the right to rescind or cancel the loan with the proper dates filled in on that disclosure, i.e. the dates were blank. (See Exhibit "C")

c. The Final material Truth in Lending disclosure APR is under stated by more than $100.00 in violation of 12 CFR § 226.18 (d)(1)(i).

3

13.    By the foregoing acts, Defendant concealed the true cost of credit to Plaintiffs, defeating the purpose of TILA, and damaging Plaintiffs. Plaintiffs, had they been appropriately informed, could have south other sources of credit or negotiated different terms, but they were unable to do so by virtue of Defendant's conduct, for which Defendant is now responsible.

14.    Plaintiffs were charged, at Closing, a "yield spread premium" ("YSP"), despite no sufficient disclosure having been made of such YSP at least three business days before Closing. In addition, the Settlement Statement deceptively stated that the YSP was a discount point that would buy down the Plaintiffs interest rate, when the discount point up sold the interest rate. Defendant did not inform Plaintiffs at Closing that the YSP was paid by the Lender and would up sell the interest rate, causing among others, higher monthly payments. The foregoing representations were false, misleading, concealment of the truth and damaging to Plaintiffs, because Plaintiffs were induced to believe the cost of their loan was less than it actually was. In fact, the YSP raised the cost of their loan by an amount that stripped Plaintiffs of equity.

15.    Defendant made certain representations within the Hud-1 Settlement Statement including the Discount Points were charged to buy down the interest rate, when in fact it raised the interest rate.

16.    Defendant's disclosure of the discount points is false, as at the time of the origination of the loan, Defendant represented to Plaintiff that the discount points would buy down the interest rate when in fact it raised the interest rate concealing the same as a Yield Spread Premium.

4

17. Defendant's representations were material, in that such representations as to the truth of the discount points would have caused Plaintiff to shop for a loan elsewhere.

18. Defendant knew of the falsity of the disclosure of the discount points in the Hud-1 Settlement Statement and that Defendant's failure to disclose how the discount points affected the loan would also cause the Plaintiffs to shop elsewhere for different financing.

19. Defendant intends for their misrepresentations and failure to disclose to be relied on.

20. Plaintiffs were ignorant of the Defendant's falsity of the representations and failure to disclose.

21. Plaintiff relied on the Defendant's misrepresentations and disclosures.

22. Plaintiffs have a right to rely on the Defendant's representations and disclosures.

23. Plaintiffs have incurred consequent and proximate injury as a result of Plaintiffs' reliance on the representations and disclosures made by Defendant, in that Plaintiffs accepted credit from Defendant that Plaintiffs would not have otherwise accepted had Defendant's misrepresentations and lack of disclosure been know to Plaintiffs.

24. By reason of fraud, the debt due on the Note and Mortgage should be declared void.

25. By reason of the fraud, the Plaintiffs should be entitled to damages as well as punitive damages.

26.     The Plaintiff repeats, realleges, and incorporates by reference the foregoing paragraphs. Defendant's violations of Unfair Trade Practices Act ("UTP") include misrepresenting the quality, characteristics, benefits and rights of the services involved in the transaction.

27.     But for the misrepresentations by Defendant of Defendant's services in the consumer lending transaction with Plaintiffs, Plaintiffs would not have sustained their damages there from and would not have entered into the transaction.

28.     Defendant stands responsible for those misrepresentations and resultant damage by virtue of its claim of being the Lender and owning and holding the note and related lien(s).

29.     Plaintiffs rescinded the loan by Exhibit "B" attached hereto and incorporated herein as if fully setout. Under the provisions of 15 USCA § 1635(a) and 12 CFR 226.23, Plaintiffs are allowed to rescind the loan transaction which is the subject of this complaint. Once a rescission letter is sent to the lender or the lenders assignee, such as Defendant, the lender must under the provisions of 15 USCA § 1636(b) perform those certain acts within that statute. Defendant did not perform the acts that are mandatory at 15 USCA § 1635(b). Since those acts were not performed by Defendant, Plaintiffs have no obligation to pay for the loan, 15 USCA § 1635(b), sentence 5.

30.     The above mentioned acts were taken within the time prescribed by law. The Court should find Defendant in violation of that section of the consumer protection laws and rescind the same at no cost to Plaintiffs.

31.     The above constitutes at violation of 15 USCA § 1640 *et seq*. In that Defendant failed to rescind the loan transaction or respond to the rescission letter in a

meaningful way by the end of the 20 day period prescribed by law at 15 USCA §
1635(b). This non-action of Defendant constitutes a violation therein.

32.    The Property is Plaintiffs' residential homestead. Plaintiffs will be
irreparably injured without adequate remedy at law if the currently pending action for
results in issuance of a writ of possession or its equivalent, and Plaintiffs are evicted from
the property. Plaintiffs ask that the Court restrain and thereafter enjoin any attempt to
evict Plaintiffs or enforce any claim of right by Defendant, or any third party, to
possession of the Plaintiffs' Property, pending resolution of this suit.

33.    For those reasons in the foregoing paragraph, and allegations elsewhere
hereinabove in the other foregoing paragraphs, it is crucial to the preservation of
Plaintiffs' rights and Property that action in this suit by Defendant proceeding, in this
Court, or any appeal there from, be stayed until final resolution of the instant case.

WHEREFORE, Plaintiffs pray that this court declare that Defendant's actions
violate the UTP; that the Defendant's actions be declared to be in violation of the TILA
and HOEPA; that the Defendant's actions, which violate the UTP and TIAL, be enjoined;
that the consumer loan transaction in accordance with 15 USCA § 1635(b) be rescinded,
including a declaration that the Plaintiffs are not liable for any finance charges or other
charges imposed by Defendant; for a declaration that the security interest in Plaintiffs'
property created under the transaction is void and an order requiring Defendant to release
such security interest; for return of any money or property given by Plaintiffs to anyone,
including Defendant, in connection with the transaction; that judgment be entered in
favor of Plaintiffs for statutory damages, costs, and attorney's fees as provided by 15
U.S.C. §§ 1640(a) and 1692k(a); that any foreclosure action or sale be set aside; that

7

Plaintiffs be awarded compensatory damages in an amount to be determined at trial; that Plaintiffs be awarded actual and exemplary damages as allowed by law; that Plaintiffs be awarded their reasonable and necessary attorney's fees and costs; that Plaintiffs be awarded pre-judgment and post-judgment interest as allowed by law; that any action to interfere with Plaintiffs' exclusive use and possession of their residence be temporarily restrained and permanently enjoined, pending resolution of the instant case, and specifically to bar enforcement of any and all foreclosures related remedies, including Defendant's attempts to take possession of the Plaintiffs' Property through unlawful detainer procedures under Arkansas law; and that Plaintiffs' be granted such other and further relief as this Court deems equitable and just.

Respectfully Submitted,

Arthur A. Dercksen and Nell A. Dercksen

RICE & ADAMS
Attorneys for Plaintiff
501 W. Main Street
P.O. Box 5587
Jacksonville, AR 72078
(501) 982-6556

By: _____
Scott A. Scholl, (98192)

STATE OF ARKANSAS  )
                   ) SS  **VERIFICATION**
COUNTY OF          )

We, Arthur A. Dercksen and Nell A. Dercksen, hereby state under oath that we have read the above and foregoing *Complaint*, and that the statements set forth therein are true and accurate to the best of our knowledge, information and belief.

_____
Arthur A. Dercksen

_____
Nell A. Dercksen

SWORN AND SUBSCRIBED to before me, the undersigned authority, on this, the ___ day of March 5 , 2006.

_____
Notary Public

My Commission Expires:

MISTY ACORD          Notary Public
Johnson County    State of Arkansas
My Commission Expires June 29, 2011

9

Return To:

**Ameriquest Mortgage Company**
**P.O. Box 11507,**
**Santa Ana, CA 92711**

Prepared By: Ameriquest Mortgage Company
**Elizabeth Nelson**
**7633 East 63rd Place, Suite**
**505**
**Tulsa, OK 74133**

———————————— [Space Above This Line For Recording Data] ————————————

# MORTGAGE

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) **"Security Instrument"** means this document, which is dated May 24, 2005
together with all Riders to this document.
(B) **"Borrower"** is Arthur A Dercksen and Nell A Dercksen, Husband and Wife

Borrower is the mortgagor under this Security Instrument.
(C) **"Lender"** is Ameriquest Mortgage Company

Lender is a Corporation
organized and existing under the laws of Delaware
Lender's address is 1100 Town and Country Road, Suite 200   Orange, CA 92868

Lender is the mortgagee under this Security Instrument.

**ARKANSAS**-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          **Form 3004 1/01**
05/24/2005 8:44:17                                    0121122402 -7392

**AM6AR** (0311)

Page 1 of 15                    Initials: _____

VMP Mortgage Solutions (800)521-7291

0000012112240203011141601



**(D) "Note"** means the promissory note signed by Borrower and dated May 24, 2005                        .
The Note states that Borrower owes Lender ninety-five thousand two hundred and 00/100
Dollars
(U.S. $ 95,200.00            ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than June 1, 2035                        .
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(K) "Escrow Items"** means those items that are described in Section 3.
**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time,
or any additional or successor legislation or regulation that governs the same subject matter. As used in this
Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a
"federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan"
under RESPA.

Initials: _____

AM6AR (0311)                                         Page 2 of 15                                    **Form 3004  1/01**

0121122402 - 7392

05/24/2005 8:44:17



0000012112242020301141602

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably mortgages, grants and conveys to Lender        the        following        described        property        located        in        the
County                                     of                           JOHNSON                                        :

[Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]

Legal Description Attached Hereto and Made a Part Hereof.

Parcel ID Number: 002-01372-000                          which currently has the address of
215 College Avenue                                                                      [Street]
Clarksville                                          [City], Arkansas 72830        [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
   UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
   **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items

Initials:_____

AM6AR (0311)                          Page 3 of 15                          Form 3004   1/01
05/24/2005 8:44:17                                                    0121122402 - 7392


0000012112240203011141603

pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which

Initials: _____

0121122402 - 7392

05/24/2005 8:44:17



payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

0121122402 - 7392

05/24/2005 8:44:17



0000012112240203011441605

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance

Initials: _____

**AM6AR** (0311)                                    Page 6 of 15                                    **Form 3004   1/01**

0121122402 - 7392

05/24/2005 8:44:17



0000012112240203011141606

carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

0121122402 - 7392

05/24/2005 8:44:17



0000012112240203011141607

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage**

0121122402 - 7392

05/24/2005 8:44:17



00000121122402030114 1608

**Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials: _____

**AM6AR** (0311)

Page 9 of 15

**Form 3004  1/01**

0121122402 - 7392

05/24/2005  8:44:17


0000012112240203011141609

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless

Initials: _____

AM6AR (0311)                          Page 10 of 15                          Form 3004  1/01

0121122402 - 7392

05/24/2005  8:44:17



0000012112240203011141610

Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**AM6AR** (0311)

Initials: _____

Page 11 of 15

Form 3004   1/01

0121122402 - 7392

05/24/2005 8:44:17



0000012112240203011141611

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: _____

0121122402 - 7392

05/24/2005 8:44:17



0000012112240203011416l2

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

It is understood and agreed to by Borrower that this Security Instrument is subject to the foreclosure procedures of the Arkansas Statutory Foreclosure Law, Act 53 of 1987, as amended from time to time (the "Act"), for Borrower's covenant or agreement in this Security Instrument. In furtherance and not in limitation of the provisions of Section 12, any forbearance by Lender in exercising any right or remedy under the Act shall not be a waiver of or preclude acceleration and the exercise of any right or remedy under the Act, or at the option of Lender, use of judicial foreclosure proceedings.

**23. Release.** Upon payment in full of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

Initials: _____

Form 3004  1/01

0121122402 - 7392

05/24/2005 8:44:17



0000012112240203011141613

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
**Arthur A Dercksen**                                        -Borrower

_____

_____ (Seal)
**Nell A Dercksen**                                          -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                                                            -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                                                            -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                                                            -Borrower


0000012112240203011141614

**STATE OF ARKANSAS,**                                    **County ss:**

On this the_____ day of _____ , before me, the
　　　　　Day　　　　　　　　　　　　　　　　　　Month/Year

undersigned officer, personally appeared

_____

_____

_____

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged that he/she (they) executed the same for the purposes
therein contained.

In witness whereof I hereunto set my hand and official seal.

My Commission Expires:

_____

Notary Public



0000012112240203011141615

**Arthur A. and Nell A. Dercksen**
**215 College Avenue**
**Clarksville, AR 72830**

CERTIFIED MAIL # _____

October 3, 2005

To: Ameriquest Mortgage Company
P. O. Box 1100
Santa Ana, CA 92711

Re: Notice of Rescission of loan #012112402-7392

Dear Sir/Madam:

On or about May 24, 2005, I entered into a consumer credit transaction (hereinafter "the transaction") with Ameriquest Mortgage Company (Herein after "Lender"). In the transaction, Lender took a security interest in my principle residence.

Pursuant to the Federal Truth in Lending Act ("TILA"), I have the right to rescind the transaction within 3 days of receipt of my notice of my right of rescission and all other material disclosures required by TILA and the regulations there under 15 U.S.C. §1635(a). The rescission information was never provided properly by the Lender.

By this letter, I rescind the transaction.

By way of further explanation, material disclosures were omitted or made erroneously in the course of the transaction. These include, but are not limited to:

(1) I did not receive two copies of the right to rescind or cancel the loan with only my name and signature. (See Exhibit A, attached hereto.)

(2) My wife did not receive two copies of the right to rescind or cancel the loan with only her name and signature. ( See Exhibit A, attached hereto)

(3) The Truth-in-Lending (TIL) disclosure was grossly understated for both the APR and the Finance Charge. (See Exhibit B, attached hereto)

(4) I did not receive all or in the manner prescribed "material disclosures" defined in 15 USC §1602(u) and required by 15 USC §1638.

(5) Significantly under disclosed "finance charge" and "APR" on our TIL disclosure and other TILA/RESPA violations.

1



(6) Our HUD-1 statement is dated 2 days after the day of our Note, Mortgage and other closing disclosures. If fact we actually signed the documents on the 27th, the day after the date of the HUD-1, per the closer who came to our home. Therefore, we did not receive the required number of days to consider whether to cancel the loan or not.

As a consequence of this rescission, Lender is required to do the following within 20 days of receipt of this letter: (1) desist from making any claims for finance charges in this transaction; (2) return all money paid in the transaction as itemized below; (3) satisfy all security interests, including mortgages, which were acquired in the transaction. If Lender fails to do so then we would have the right to retain the loan proceeds without being obligated to repay your loan. Further, we would be entitled to TILA statutory damages, as well as damage for any state law violations, either as part of an affirmative claim for failure to honor a valid recission and/or as a recoupment against any claim which you assert against us. Finally, if you do not acknowledge our right to rescind, we will include such a claim in an action which we may proceed to bring against your company in federal district court plus seek attorney's fees.

Approximate Payments through August, 2005

| | |
|---|---|
| Costs for Transaction: | $6389.03 per Hud-1 |
| Principal Paid: | $99.08 |
| Interest Paid: | $1517.02 |
| Total | $8005.13 |

Upon Lender's performance, I will tender in like kind all sums to which Lender is entitled. The original note is $95200.00 minus monies paid to Lender above of $8005.13 = $87194.87, like kind tender amount.

Any failure on Lender's part to take the actions described above in a timely fashion may result in monetary liability under TILA.

Please correspond in writing only.

Sincerely Yours,


_____

Arthur A. Dercksen


_____

Nell A. Dercksen

# NOTICE OF RIGHT TO CANCEL

LENDER:   Ameriquest Mortgage Company

DATE:   May 24, 2005
LOAN NO.:   0121122402 - 7392
TYPE:   ADJUSTABLE RATE

BORROWER(S): Arthur A Dercksen        Nell A Dercksen

ADDRESS:        215 College Avenue
CITY/STATE/ZIP:   Clarksville,AR 72830

PROPERTY:   215 College Avenue
Clarksville,  AR  72830

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.   The date of the transaction, which is

| ENTER DOCUMENT SIGNING DATE |
| --- |
|   ; |

or
2.   The date you received your Truth in Lending disclosures;
or
3.   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Ameriquest Mortgage Company
1600 S Douglass Rd
Anaheim, CA 92806

ATTN:   **FUNDING**
PHONE: **(714)634-3494**
FAX:       **(800)664-2256**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must
send the notice no later than MIDNIGHT of

| ENTER FINAL DATE TO CANCEL |
| --- |
| |

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

SIGNATURE _____        DATE _____

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

BORROWER/OWNER Arthur A Dercksen        Date        BORROWER/OWNER Nell A Dercksen        Date

BORROWER/OWNER        Date        BORROWER/OWNER        Date


1004-NRC (Rev 11/03)        000001211224020400050191



**BORROWER COPY**



05/24/2005 8:44:17 PM

# NOTICE OF RIGHT TO CANCEL

LENDER:   Ameriquest Mortgage Company

DATE:  May 24, 2005
LOAN NO.:   0121122402 - 7392
TYPE:   ADJUSTABLE RATE

BORROWER(S): Arthur A Dercksen        Nell A Dercksen

ADDRESS:        215 College Avenue
CITY/STATE/ZIP:   Clarksville,AR 72830

PROPERTY:  215 College Avenue
            Clarksville,  AR  72830

You are entering into a transaction that will result in a mortgage/lien/security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

1.  The date of the transaction, which is

**ENTER DOCUMENT SIGNING DATE**

    or
2.  The date you received your Truth in Lending disclosures;
    or
3.  The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

---

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

**Ameriquest Mortgage Company**
**1600 S Douglass Rd**
**Anaheim, CA 92806**

ATTN:  **FUNDING**
PHONE: **(714)634-3494**
FAX:     **(800)664-2256**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of

**ENTER FINAL DATE TO CANCEL**

(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.
**I WISH TO CANCEL**

SIGNATURE                                          DATE

---

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement, all given by lender in compliance with Truth in Lending Simplification and Reform Act of 1980 (Public Law 96-221).

Each borrower in this transaction has the right to cancel. The exercise of this right by one borrower shall be effective to all borrowers.

BORROWER/OWNER Arthur A Dercksen            Date        BORROWER/OWNER Nell A Dercksen            Date

BORROWER/OWNER                                       Date        BORROWER/OWNER                                       Date

1004-NRC (Rev 11/03)        0000012112240204000050101

**BORROWER COPY**

05/24/2005 8:44:17 PM